658 A.2d 345

COMMONWEALTH of Pennsylvania, Appellee

v.

Clark KATZE, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 18, 1994.

Decided May 22, 1995.

Reargument Denied June 21, 1995.

Neil Carver, Philadelphia, for C. Katze.

Catherine Marshall, Ronald Eisenberg, Hugh J. Burns, Jr., Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### ORDER

PER CURIAM.

The Court being evenly divided, the Order of the Superior Court is affirmed.

PAPADAKOS, J., did not participate in the decision of this case.

NIX, C.J., files an Opinion in Support of Affirmance in which CASTILLE and MONTEMURO, JJ., who is sitting by designation, join.

ZAPPALA, J., files an Opinion is Support of Reversal in which FLAHERTY and CAPPY, JJ., join.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Chief Justice.

Appellant, Clark Katze, appeals from the Order of the Superior Court which reversed the trial court's grant of a new trial and remanded for sentencing. Appellant was charged with criminal solicitation to commit murder, and he was convicted in a non-jury trial. After post-verdict motions, the court ordered a new trial. Upon appeal by the Commonwealth, the Superior Court reversed the lower court's grant of a new trial. This Court granted review.

In August of 1990, Appellant approached Rodney Middleton and offered him money to kill Appellant's wife. Appellant gave Middleton $300.00 and promised an additional $1,500.00 after the murder was carried out. Appellant provided Middleton with a photograph of his wife and the route she took to work. Middleton approached Appellant's wife and told her of her husband's intentions, but she did not believe him. He informed police in Upper Darby, Delaware County, and in Philadelphia of what had transpired between him and Appellant; however, none of the officers acted on the information because they did not believe Middleton. Middleton then began taping his conversations with Appellant.

After illegally taping several conversations with Appellant, Middleton approached a Philadelphia police officer and played him the tape; however, the tape was unintelligible. The officer put Middleton in contact with homicide detectives. Middleton turned over the money Appellant had given him, and detectives took a statement without listening to the tape. Middleton then agreed to wear a wire in accordance with the Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. §§ 5701–5781 ("the Wiretap Act"), to record his next

conversation with Appellant. Wanting to warn Mrs. Katze of the situation but unable to locate her, detectives met with her family in Ocean City, New Jersey, to warn them that her life was in danger and to obtain their help in locating her. The family did not believe the detectives so they played one of the tapes which had been made by Middleton. The family assisted the police in locating Appellant's wife.

Detectives and local police went to Appellant's home to inform his wife of the situation, and she left her home with the detectives. Although Appellant was present when this happened, he was not arrested until six days later. After being arrested and advised of his *Miranda* rights, Appellant gave a statement to police in which he admitted asking Middleton and another individual, John Reid, to kill his wife. Appellant also explained that he intended that his wife only be frightened. At the suppression hearing Appellant testified that his brother-in-law had told him his conversations with Middleton were on tape.

Appellant was charged with criminal solicitation to commit murder. He moved to have the illegal recording made by Middleton suppressed as well as the statement he made to police. The suppression court found that the tape made by Middleton violated the Wiretap Act and that Appellant provided police with a statement because he knew of the existence of that tape. (R.R. 285A–86A). Nonetheless, the suppression court went on to hold that introduction of this evidence was not prohibited because the original illegality was committed by an individual without encouragement by the police or an agency of the state. (R.R. 286A). Therefore, the court denied Appellant's motion to suppress.

At Appellant's non-jury trial the illegal tape initially made by Middleton was not offered into evidence, but the tape made pursuant to the Wiretap Act was. The trial court was unable to understand what was being said on the admitted tape. The statement Appellant had made to the police was also admitted at trial. Middleton testified regarding his meetings with Appellant. Appellant also testified and maintained that he only wanted Middleton to scare his wife rather than kill her.

Appellant was convicted of criminal conspiracy. He filed post-verdict motions regarding the admission of his statement to police. The Court of Common Pleas granted a new trial, holding that the record supported the suppression court's finding that the statement Appellant made to the police was the product of an illegal tape. (R.R. 699A–702A). In an opinion addressing the Commonwealth's objection to the grant of a new trial, the trial court held that the suppression court was incorrect in concluding that the statement was not prohibited because the illegality was committed by a private person rather than a state actor. *Commonwealth v. Katze*, No. 0169 Nov. Term 1990, slip op. at 4 (C.P. Philadelphia County Sept. 21, 1992). The court affirmed its decision to grant a new trial and declined to address the issues of whether Appellant waived his claim by testifying or whether admission of the statement was harmless because neither issue was asserted by the Commonwealth. *Id.* at 5–6.

On appeal by the Commonwealth, the Superior Court reversed the trial court's Order granting a new trial and remanded the matter for sentencing. *Commonwealth v. Katze*, No. 139 Philadelphia 1992, 429 Pa.Super. 647, 628 A.2d 452 (Pa.Super. March 30, 1993). The Superior Court did not address the issue of whether Appellant's statement was derived from the illegal tape because it found that its admission was harmless error if it was error at all. *Id.* at 4. In holding that a new trial should not have been granted, the Superior Court noted that Appellant testified at the trial, that his testimony was virtually identical to his statement to police, and that Middleton also testified. *Id.* at 5. Thus, the Superior Court found that the evidence which was properly admitted was substantially similar to Appellant's statement. *Id.*

Appellant appealed to this Court, and we granted allocatur to address the following issues: 1) whether violation of the Wiretap Act which produces significant evidence for the Commonwealth at trial can be harmless error; 2) whether the Commonwealth's harmless error argument was waived when the Commonwealth failed to raise the argument in the trial court and raised it for the first time before the Superior

Court; 3) whether the suppression court erroneously failed to suppress Appellant's statement to police; and 4) if the suppression court did err in admitting Appellant's statement, whether the fact that Appellant testified purged the taint of this error, rendering it harmless.

Neither party disputes that Middleton's taping of his conversations with Appellant was a violation of the Wiretap Act.[1] The Act allows for the suppression of "the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom [if] . . . [t]he communication was unlawfully intercepted." 18 Pa.C.S. § 5721(a)(1).

Appellant argues that the Wiretap Act does not allow for a harmless error analysis, and therefore, Appellant is entitled to a new trial because evidence obtained in violation of the Act was admitted at trial. Appellant further asserts that the Superior Court should not have undertaken a harmless error analysis in reaching its decision.

It is the Commonwealth's position that the Superior Court was correct in reversing the grant of a new trial because admission of the evidence in question, even if it did derive from the illegal tape, was harmless error. The Commonwealth asserts that there is nothing in the Wiretap Act to preclude a violation from being harmless error.

Appellant cites *Commonwealth v. Hashem*, 526 Pa. 199, 584 A.2d 1378 (1991), to support his position that a harmless error

---

1. 18 Pa.C.S. § 5703 provides:

   Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

   (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

   (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

   (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

analysis was rejected by this Court where there is a violation of the Wiretap Act. In *Hashem,* police investigators were authorized to monitor telephone communications for a given period on specified telephone numbers. One of the intercepted calls involved a crime which was unrelated to the crime for which the intercept order had been granted. Following the expiration of the intercept order, investigators filed a report as required by the Wiretap Act; however, the report failed to include Hashem's name and the criminal activity involved. Hashem was arrested and charged based on information obtained through the original intercept. At Hashem's preliminary hearing, the Commonwealth presented transcripts of the intercepted telephone calls. Prior to the hearing, the Commonwealth had not obtained authorization to disclose the contents of the wiretap as required by the Wiretap Act. More than two years after the final report had been filed, the Commonwealth moved to amend that report and requested authorization to use the evidence obtained through the intercept at Hashem's trial.

The Wiretap Act specifically required the Commonwealth to make application prior to disclosure of evidence of offenses which are different than those offenses in the original authorization. This Court held that it is not the defendant's burden to show that he was prejudiced by failure to comply with the Wiretap Act. *Id.* at 205, 584 A.2d at 1381. Because the Commonwealth failed to comply with the dictates of the Wiretap Act, we held that Hashem's conviction was "irremediably tainted" and ordered his discharge. *Id.* at 207, 584 A.2d at 1382.

Appellant cites the following language from *Hashem* in support of his position that a harmless error analysis is not applicable in a wiretap case:

> If the surveillance permitted by the Act is to meet the test of reasonableness, it is essential that, at a minimum, *all* the requirements directed by the Legislature be met. *No* violations of *any* provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked.

*Id.* at 206, 584 A.2d at 1382. According to Appellant, this language and our holding that the defendant does not have to prove prejudice indicate this Court's determination that a harmless error analysis is in derogation of the Act. Appellant misconstrues our holding in *Hashem* and the function of a harmless error analysis.

In *Hashem,* there was no doubt that the evidence the Commonwealth used against Hashem should have been suppressed because the Commonwealth failed to comply with the provisions of the Wiretap Act. *Id.* Where there is a violation of the Wiretap Act, the proper remedy is suppression of the evidence secured through that violation. *See* 18 Pa.C.S. § 5721. However, we also held that the violation in question "irremediably tainted" Hashem's conviction. 526 Pa. at 207, 584 A.2d at 1382. This is not to say that some remedial occurrence, such as harmless error, could not have overcome the taint which we determined to require Hashem's discharge.

In asserting that a harmless error analysis should not be utilized in reviewing admission of evidence obtained through a violation of the Act, Appellant overlooks the purpose of a harmless error analysis. As this Court stated,

> [t]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that "[a] defendant is entitled to a fair trial but not a perfect one."

*Commonwealth v. Thornton,* 494 Pa. 260, 266, 431 A.2d 248, 251 (1981) (citations omitted). A harmless error analysis is an important and valuable tool in preventing the waste of judicial resources. Clearly, a determination that an error is harmless is not an approval of the behavior which may have led to the error. Violations of the Wiretap Act are not approved of by this Court, nor should they be approved of by any other court in the Commonwealth. Nonetheless, judicial economy must not be disregarded.

Allowing a harmless error analysis where there has been a violation of the Wiretap Act does not contradict our holding in *Hashem* that a defendant does not have to prove he was prejudiced by the violation. In *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), this Court set forth the standard of proof to be used in determining whether an error is harmless. We held that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Id.* at 405–06, 383 A.2d at 162. We also made it clear that the Commonwealth bears the burden of showing beyond a reasonable doubt that the error was harmless. *Id.* at 406 n. 11, 383 A.2d at 162 n. 11. Clearly, this is consistent with our holding in *Hashem* that the defendant does not have to prove prejudice.

Having established that a harmless error analysis may be used in reviewing the admission of evidence obtained in violation of the Wiretap Act, we turn to Appellant's contention that the issue of harmlessness was waived by the Commonwealth.

Appellant asserts that the issue of harmless error was not properly before the Superior Court because the Commonwealth had not raised this issue before the trial court prior to raising it before the Superior Court. According to Appellant, the Commonwealth thereby waived its right to assert harmless error.

The Commonwealth argues that it was not susceptible to waiver because it was not the appellant when the waiver is said to have occurred. According to the Commonwealth, because it was the verdict winner and non-moving party before the trial court, it was not required to preserve issues in order to avoid waiving them. The Commonwealth was not the moving party until it was before the Superior Court, where it did raise the issue of harmlessness. The Commonwealth further argues that harmless error cannot be waived because the question of harm cannot be separated from an assertion of reversible error. The Commonwealth asserts that because Appellant, the moving party, raised a claim of error, he has also asserted that he was harmed by that error. The Com-

monwealth also contends that the question of error cannot be separated from the question of harmlessness.

In upholding the grant of a new trial, the trial court noted that the Commonwealth did not assert that the introduction of Appellant's statement to the police was harmless error. *Commonwealth v. Katze*, No. 0169 Nov. Term 1990, slip op. at 5 (C.P. Philadelphia County Sept. 21, 1992). The court stated that "it was incumbent upon the Commonwealth to advance any sound argument in support of its claim and its failure to do so should be deemed legally significant," and refused to raise the harmless error issue *sua sponte*. *Id.*

There is a general rule that issues not raised in the lower court may not be addressed on appeal; however, this rule is applicable only to appellants. *Sherwood v. Elgart*, 383 Pa. 110, 115, 117 A.2d 899, 901 (1955). The Commonwealth in the instant matter was not the appellant before the trial court, where the waiver is alleged to have occurred; therefore, it could not have waived any issues. Appellant cites several cases in support of its proposition that the Commonwealth waived its right to argue harmless error;[2] however, in all of the cases cited, the party deemed to have waived an issue was the appellant. The Commonwealth, as the non-moving party before the trial court in the instant matter, had no obligation to preserve issues at the post-trial stage in the appeal process. Therefore, it was permitted to raise the issue of harmless error before the Superior Court.

We hold that the Commonwealth did not waive its right to raise the issue of harmless error. Therefore, we need not address the Commonwealth's position that harmless error analysis is a non-waivable issue.

**2.** Appellant cites *Commonwealth v. Burkholder*, 528 Pa. 119, 595 A.2d 59 (1991); *Commonwealth v. Capitolo*, 508 Pa. 372, 498 A.2d 806 (1985); *Commonwealth v. Gravely*, 486 Pa. 194, 203 n. 4, 404 A.2d 1296, 1300 n. 4 (1979); *Commonwealth v. May*, 485 Pa. 371, 373 n. 3, 402 A.2d 1008, 1009 n. 3 (1979); *Commonwealth v. Jackson*, 464 Pa. 292, 296–97, 346 A.2d 746, 747–48 (1975).

■ We now turn to the issue of whether the Superior Court erred in determining that it was harmless error to allow into evidence Appellant's statement to police.[3]

In reversing the trial court's grant of a new trial, the Superior Court held that if admission of Appellant's statement to the police was error, it was harmless. *Commonwealth v. Katze*, No. 139 Philadelphia 1992, slip op. at 5, 429 Pa.Super. 647, 628 A.2d 452 (Pa.Super. March 30, 1993). The Superior Court addressed the harmless error issue in the "interests of finality and conservation of judicial resources." *Id.* at 4. The court held that there was no reasonable basis for granting a new trial because there was properly admitted evidence which was substantially similar to Appellant's statement. Therefore, admission of the statement, if error, was harmless. *Id.* at 4–5.

Instantly, Appellant testified on his own behalf at his trial, and his testimony was virtually identical to the statement he had given to the police. Moreover, it was substantially similar to the testimony given by both Middleton and Reid.[4] As this Court stated in *Commonwealth v. Story*, "[a]n error which, viewed by itself, is not minimal, may nonetheless be harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence." 476 Pa. 391 at 411, 383 A.2d 155 at 165. There is no question that Middleton's testimony was properly admitted. Reid's testimony, in light of Appellant's waiver of this issue, was also properly admitted. Because the statement given to police by Appellant was so similar to properly admitted evidence, if it was error to admit it, the error was harmless.

In light of our holding that admission of Appellant's statement to the police was harmless error because there was similar evidence presented at trial, we need not address the

3. Appellant also argues before this Court that his trial testimony was impelled from his knowledge of the illegal tape made by Middleton. However, Appellant failed to preserve this issue in post-trial proceedings. Therefore, we will not consider this issue as it has been waived.

4. The issue of whether Reid's testimony was obtained in violation of the Act is not before this Court. This was not raised by Appellant below, and therefore, it is waived.

issue of whether Appellant's trial testimony purged the taint, if such existed, of the statement.

We hold that admission of Appellant's statement to police into evidence, if it was derived from a violation of the Wiretap Act such that its admission was error, was harmless. Therefore, we affirm the judgement of the Superior Court which reversed the trial court's grant of a new trial.

CASTILLE and MONTEMURO, JJ., join in this Opinion in Support of Affirmance.

### OPINION IN SUPPORT OF REVERSAL

ZAPPALA, Justice.

The use of the harmless error analysis with regard to a clear violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701–5727, is repugnant to the individual right of privacy and to the purposes underlying the Act.

It is undisputed that a conversation of Appellant's was illegally taped by Ronald Middleton. The Commonwealth was able to exploit this illegality to extract a statement from Appellant which implicated him in criminal solicitation. The record establishes that Appellant's statement was given solely because the illegal tape existed. At the suppression hearing, Appellant stated, "I knew they had things on tape where I said I wanted my wife killed and I wanted to correct that." (R. 262a). Later, Appellant, in answer to the question "Why did you want to have your version known? responded, "Because I knew from what I heard from four other people, three other people, that they felt I was trying to have my wife killed, and I wasn't, and I wanted that to be known right up front. I didn't have anything to hide in that area." (R. 269a). Appellant further stated that the people he was referring to had been told about the tape and some of them had heard the tape. (R. 269a).

The suppression court specifically found that Appellant's statement was a product of the illegal taping. It erred, however, by holding that because Middleton was not an agent

of the state, suppression was not required.[1] The trial court granted a new trial because the record supported the finding that the statement was derivative of the illegal tape.

The existence of the tape also prompted Appellant to testify at trial and most likely influenced his decision to proceed nonjury.[2] Thus, the key prosecution evidence was the result of the tape made by Middleton, which is a clear violation of the Wiretap Act.

Notwithstanding this fact, the Superior Court reversed the grant of a new trial and addressed the harmless error issue in the "interests of finality and conservation of judicial resources." *Commonwealth v. Katze*, No. 139 Philadelphia 1992 slip op. at 4, 429 Pa.Super. 647, 628 A.2d 452 (Pa.Super. March 30, 1993).

Judicial economy should never be exalted to a position higher than that of the fundamental right of individual privacy. Our Court has continually recognized that the legitimate expectation of privacy is one of the most precious rights in a free society. *Commonwealth v. Brachbill*, 520 Pa. 533, 548, 555 A.2d 82, 90 (1989). Our legislature recognized that right and set forth stringent requirements to be met before one's individual liberties are impinged upon. See generally, 18 Pa.C.S. §§ 5708–5726. Those requirements were not met in the instant case and such violation cannot be cavalierly disregarded or categorized as harmless error.

The language of the Act does not lend itself to a harmless error analysis. The Act allows for the suppression of "the contents of any intercepted wire, electronic or oral communication, or *evidence derived therefrom* [if] ... [t]he communication was unlawfully intercepted." 18 Pa.C.S. § 5721(a)(1)

1. Pursuant to *Commonwealth v. DeBlase*, 357 Pa.Super. 71, 515 A.2d 564 (1986), evidence derived from a violation of the Wiretap Act, from whatever source, is to be suppressed.

2. Footnote 3 of the Opinion in Support of Affirmance states that Appellant's claim that "[his] trial testimony was impelled from his knowledge of the illegal tape" is waived since it was not preserved as an issue in post-trial proceedings. I do not see this as a separate issue but as a reason why Appellant's statement is "derived" from the illegal tape and therefore should have been suppressed.

(emphasis added).  When the court deems the violation harmless because evidence was properly admitted which is cumulative of the illegal interception, the phrase "evidence derived therefrom" is rendered meaningless.  The court has no way of determining whether the evidence presented by the defendant, i.e., a prior statement or trial testimony, would have surfaced had it not been for the initial illegal tape.  Therefore, the court is unable to determine whether the Commonwealth's evidence was actually "evidence derived" from an illegal interception.  As rules designed to protect fundamental rights can never be treated as mere surplusage, *Commonwealth v. Brachbill*, 520 Pa. 533, 548, 555 A.2d 82, 90 (1989), the implementation of the harmless error analysis in this regard is inappropriate.

We have held that an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless.  *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).  It appears to be nearly impossible to conclude beyond a reasonable doubt that a particular defendant would have given statements or testified at trial in the absence of an illegal tape incriminating him.  The use of the harmless error analysis therefore strips the defendant of the protections provided by the Act.

We recognize the fact that Rodney Middleton's and John Reid's testimony was also substantially similar to Appellant's statement and his testimony at trial.  We do not believe this renders the admission of Appellant's statement harmless, however, since the most damning of all evidence is that which comes from the mouth of a defendant himself.  See generally, *Commonwealth v. Bullard*, 465 Pa. 341, 350 A.2d 797 (1976).

Furthermore, we agree with Appellant that the language in *Commonwealth v. Hashem*, 526 Pa. 199, 584 A.2d 1378 (1991), suggests that a violation of the Act is not to be considered harmless error.  As cited in the Opinion in Support of Affirmance, we stated in *Hashem:*

If the surveillance permitted by the Act is to meet the test of reasonableness, it is essential that, at a minimum, *all* the

requirements directed by the Legislature be met. *No* violations of *any* provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked. We must remain steadfast in this determination because there can be no greater infringement upon an individual's rights than by an indiscriminate and unchecked use of electronic devices. Where, in the wisdom of the legislature, such devices may be authorized, as in the present act, that use will be strictly adhered to and jealously enforced; for the alternative, no privacy at all, is unthinkable.

(emphasis supplied) *Id.*, 526 Pa. at 206, 584 A.2d at 1382.

In summary, as a violation of the Wiretap Act cannot constitute harmless error, we would grant Appellant a new trial on the ground that his statement to the police and his trial testimony was derivative of the illegal tape created by Middleton.

FLAHERTY and CAPPY, JJ., join this Opinion in Support of Reversal.