J-E02004-17

2018 PA Super 166

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS ANDREW KATONA | : | |
| | : | |
| Appellant | : | No. 1995 WDA 2014 |

Appeal from the Judgment of Sentence November 10, 2014
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002549-2011

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
LAZARUS, J., OLSON, J., OTT, J., STABILE, J., and DUBOW, J.

DISSENTING OPINION BY LAZARUS, J.:                **FILED JUNE 14, 2018**

I respectfully dissent.  The Majority bases its holding on what it characterizes as a "critical distinction between the voluntary disclosure of information versus the recording of same."  Majority Opinion, at p. 14.  The Majority finds Appellant is seeking to suppress **information**, not the recordings.  The Majority states: "[T]he search warrant did not rely upon evidence derived from an unlawful wiretap, but rather the information disclosed to the authorities, which happened to also be recorded."  *Id.* at 30.  The Majority, therefore, declines to reach the Appellant's argument that the Wiretap Act permits only a single, in-home nonconsensual intercept per order. 18 Pa.C.S. § 5704(2)(iv).

Keeping in mind that the determination of whether information supporting the issuance of the warrant is sufficiently reliable to establish probable cause often hinges upon whether that information is corroborated, I

agree that the affidavit of probable cause was arguably sufficient. However, the search warrant was "irremediably tainted," and application of the "independent source doctrine" is not appropriate here. As our Supreme Court stated in **Commonwealth v. Melendez**, 676 A.2d 226 (Pa. 1996), "application of the 'independent source doctrine' is proper only in the very limited circumstances where the `independent source' is truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered." **Id.** at 231. Such is not the case here. Thus, in my view, an analysis of the propriety of the wiretap order is necessary.[1]

_____

[1] I also note my disagreement with the Majority's claim that if Appellant had a reasonable expectation of privacy in the content of what he said to the CI, then following this argument to its logical conclusion, the Commonwealth would be required to obtain prior judicial approval before asking the CI to enter Appellant's home in the first instance. Majority Opinion, at 29. This reasoning ignores the fact that it is the face-to-face communication in one's home that is constitutionally and legislatively protected *from surreptitious electronic seizure*. **Commonwealth v. Brion**, 652 A.2d 287 (Pa. 1994), as codified in 18 Pa.C.S. § 5704(2)(iv). **Cf. Commonwealth v. Rekasie**, 778 A.2d 624, 632 (Pa. 2001) ("[W]hile society may certainly recognize as reasonable a privacy expectation in a conversation carried on face-to-face within one's home, we are convinced society would find that an expectation of privacy in a telephone conversation with another, in which an individual has no reason to assume the conversation is not being simultaneously listened to by a third party, is not objectively reasonable."). It also ignores the fact that the subjective intentions of the authorities are of "little relevance to the constitutional analysis." **Commonwealth v. Dunnavant**, 107 A.3d 29, 31 (Pa. 2014) (per curiam) (Saylor, J., Opinion in Support of Affirmance). As our Supreme Court recognized, "[o]f more relevance is the occupant's expectation of privacy in his home (along with society's recognition of the reasonableness of that expectation), and the fact that the confidential informant physically

> In Pennsylvania, our Legislature has determined that although intercepting a communication to which one is a party may not be a violation of a constitutional privacy interest, it so threatens the private nature of social communication as to be considered unlawful in this Commonwealth. Recognizing this concern of the legislature, any analysis of what constitutes an oral communication under the Wiretap Act cannot be limited to an analysis on strict constitutional privacy grounds. ***The interest protected by the Wiretap Act is directed to a right not to have one's words electronically seized under circumstances which are reasonably justified.***

***Commonwealth v. McIvor***, 670 A.2d 697, 701 (Pa. Super. 1996) (en banc) (emphasis added).  Further, when it comes to the privacy interests one holds within the four walls of one's home, our Supreme Court in ***Brion*** held that "an individual can reasonably expect that his right to privacy will not be violated . . . through the use of any electronic surveillance."  652 A.2d at 289. "If nowhere else, an individual must feel secure in his ability to hold a private conversation within the four walls of his home." ***Id***.  In ***Brion***, our Supreme Court acknowledged that "[i]mplicit in any discussion of an expectation that a

_____

entered the home to secretly [record the conversation.]". ***Id.*** (emphasis added).  Moreover, I note that the Majority's statement in footnote 11, that "[i]f the communication, i.e., the actual words said, are protected in their entirety, then it is unclear why a CI sent inside the home by direction of the Commonwealth can repeat the words said to him absent prior judicial approval of the entry into the home[,]" again ignores the fact that it is the face-to-face communication in one's home that is constitutionally and legislatively protected. ***Brion***, ***supra***.  ***See also Commonwealth v. Rekasie***, 778 A.2d 624, 629 (Pa. 2001) ("In finding a constitutionally-recognized expectation of privacy, our court's primary focus [in ***Brion***] was on the ***zone of privacy in the home and the face-to-face conversations taking place therein***.") (emphasis added).  In fact, the Majority recognizes this distinction, stating that "[o]bviously, playing a recorded statement of Appellant's own words, in his own voice, is far more probative and damaging than offering a CI's testimony as to the substance of the conversation."  Majority, at 31.

communication will not be recorded, is a discussion of the right to privacy." 652 A.2d at 288. "For the right to privacy to mean anything, it must guarantee privacy to an individual in his own home." *Id.* at 289. **Brion** ended the uncertainty surrounding police use of in-home body wires by conclusively holding that Article I, Section 8 requires police to first obtain a judicial determination of probable cause before engaging in a unilaterally consensual interception of oral communications in a suspect's home pursuant to section 5704(2)(ii) of the Wiretap Act. **Id.**

As the Majority correctly notes, the General Assembly codified our Supreme Court's holding in **Brion** at 18 Pa.C.S. § 5704(2)(iv), requiring judicial approval if the oral interception "will take place in the home of the nonconsenting party[.]" 18 Pa.C.S. § 5704(2)(iv). My reading of the Wiretap Act, however, does not authorize *unlimited* in-home intercepts for a 30-day period, as contemplated in the wiretap order in this case.

The order, dated May 16, 2011, authorized *consensual* interception and provided for intercepted conversations "*between the date of this Order and thirty (30) days thereafter*, at the residence of [Appellant] or at any other location within Westmoreland County where [Appellant] may have an expectation of privacy such as one would have in one's own home." Order, 5/16/11, at ¶ 1 (emphasis added). But this is not a section 5712 wiretap; it is a section 5704(2)(iv) consensual intercept. The 30-day period is the permissible length of a *non-consensual* interception *under section 5712* of the Wiretap Act, not section 5704. **See** 18 Pa.C.S. § 5712(b). Based on my

interpretation of section 5704 of the Wiretap Act, a separate finding of probable cause is required for *each* in-home intercept, and the fact that section 5704 includes no time frame indicates to me that this is what the statutory language contemplates.

Moreover, and contrary to the Commonwealth's argument, the fact that section 5704(2)(ii) does not set forth a specific length of time during which the consent of the CI remains viable is not material to the issue here. That it is unnecessary for law enforcement to obtain a new consent from the CI prior to each intercept has no bearing on the requirement of probable cause prior to an in-home intercept. Rather, the issue is whether a single order can allow for unlimited interceptions in Appellant's home without additional probable cause that an incriminating conversation will occur upon each entry. The CI is not our concern; it is the Appellant's expectation of privacy in the words he utters in his home that is the focus of the protection. ***See Katz v. United States***, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (recognizing that "activities taking place inside the home, not within the plain view of outsiders," are entitled to Fourth Amendment protection); ***Commonwealth v. Spangler***, 809 A.2d 234 (Pa. 2002) (Pennsylvania's Wiretap Act emphasizes protection of privacy); ***cf. Commonwealth v. Rekasie***, 778 A.2d 624, 632 (Pa. 2001) (finding telephone call is "[q]ualitatively different than a face-to-face interchange occurring solely within the home in which an individual reasonably expects privacy and can limit the uninvited ear[.]").

Further, grammatically, the language in section 5704(2)(iv) speaks in the singular:

> If **an** oral interception otherwise authorized under this paragraph will take place in the home of a nonconsenting party then, in addition to the requirements of subparagraph (ii), **the** interception shall not be conducted until an order is first obtained from the president judge, or his designee who shall also be a judge, of a court of common pleas, authorizing such in-home interception, based upon an affidavit by an investigative or law enforcement officer that establishes probable cause for the issuance of such an order.  No such order or affidavit shall be required where probable cause and exigent circumstances exist.  For the purposes of this paragraph**, an** oral interception shall be deemed to take place in the home of a nonconsenting party only if both the consenting and nonconsenting parties are physically present in the home at the time of **the** interception.

18 Pa.C.S. § 5704(2)(iv) (emphasis added).  I agree with Appellant's argument that nothing in this language suggests the legislature envisioned anything more than a single interception per court order.  ***See Kyllo v. United States***, 533 U.S. 27, 40, (2001) ("Where ... the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a `search' and is presumptively unreasonable without a warrant."). ***Cf. Commonwealth v. Bruno***, 352 A.2d 40, 45-46 (Pa. 1976) ("Clearly, it would be unreasonable to allow the police to search the same premises repeatedly for the same contraband on only one showing of probable cause.  Prior to each issuance of a warrant, the information presented to the magistrate must be sufficient to persuade a reasonable person that probable

cause exists to conduct the search."), citing *Spinelli v. United States*, 393 U.S. 410 (1969) and *Aguilar v. Texas*, 378 U.S. 108 (1964).

And finally, as our Supreme Court explained in *Spangler*:

Pennsylvania's Wiretap Act emphasizes the protection of privacy, and, consistent with such emphasis, provides a statutory exclusionary rule that extends to non-constitutional violations. Because of this privacy concern, the provisions of the Wiretap Act are strictly construed.

*Spangler*, 809 A.2d at 237 (footnote and citations omitted). *See Boettger v. Miklich*, 633 A.2d 1146, 1148 (Pa. 1993) (As Wiretap Act is statute "in derogation of a constitutional right, the right of privacy[,]" it "must be strictly construed."). *See also Commonwealth v. Baumhammers*, 960 A.2d 59 (Pa. 2008) (because Wiretap Act infringes upon constitutional right to privacy, its provisions are strictly construed); *Commonwealth v. Frant*, 146 A.3d 1254 (Pa. Super. 2016) (provisions of Wiretap Act must be strictly construed); *Commonwealth v. Mickel*, 142 A.3d 870 (Pa. Super. 2016) (same).

Since the Wiretap Act requirements were not met, suppression is mandated.[2] The **information** gleaned is derivative evidence and is subject to the Wiretap Act's exclusionary rule. **See** 18 Pa.C.S. §§ 5721.1(b)(6),

---

[2] *See Commonwealth v. Katze*, 658 A.2d 345, 350 (Pa. 1995) (Zappala, J., Opinion in Support of Reversal) ("The use of the harmless error analysis with regard to a clear violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701-5727, is repugnant to the individual right of privacy and to the purposes underlying the Act.").

(c)(5).[3] **See Commonwealth v. Hashem**, 584 A.2d 1378, 1382 (Pa. 1991) ("Recognizing the vast potential for abuse in these extraordinary means of inquiring into the private conversations of citizens, the General Assembly provided within the Act itself for the remedy of suppression."). The Wiretap Act implicates fundamental constitutional concerns of the right to privacy and the prohibition against unreasonable searches and seizures.

> In the words of Article I, § 25 of the Constitution of Pennsylvania, "except[ed] out of the general powers of government . . . [to] forever remain inviolate," is the right of the people to "be secure in their persons, houses, papers and possessions from unreasonable searches and seizures[.] . . ." Article I, § 8. If the surveillance permitted by the Act is to meet the test of reasonableness, it is essential that, at a minimum, *all* the requirements directed by the Legislature be met. *No* violations of *any* provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked. We must remain steadfast in this determination because there can be no greater infringement upon an individual's rights than by an indiscriminate and unchecked use of electronic devices. Where, in the wisdom of the legislature, such devices may be authorized, as in the present act, that use will be strictly adhered to and jealously enforced; for the alternative, no privacy at all, is unthinkable.

*Id.* (emphasis in original).

---

[3] The Wiretap Act provides for exclusion of the contents "of any wire, electronic or oral communication, or evidence derived therefrom" where "required pursuant to section 5704(2)(iv), the interception was made without . . . probable cause." 18 Pa.C.S. § 5721.1(b)(6). With respect to exclusion claims under this subsection, the Appellant had the burden of establishing by a preponderance of the evidence that the interception took place in his home. Once that burden is met, the burden shifts to the Commonwealth to "demonstrate by a preponderance of the evidence that the interception was in accordance with section 5704(2)(iv)." 18 Pa.C.S. § 5721.1(c)(6).

Accordingly, consistent with *Brion*, and consistent with a strict construction of the limitations imposed by the Wiretap Act and its statutory exclusionary rule, I would conclude that a separate finding of probable cause was required for each in-home intercept under section 5704(2)(iv). Moreover, and contrary to the Majority's finding, I would conclude that the evidence obtained as a result of the tainted search warrant was not subject to the independent source doctrine. As such, I would find suppression was warranted and would vacate the judgment of sentence and remand for a new trial.

SHOGAN, J. joins this dissenting opinion.